GANDÍA, PLAINTIFF AND APPELLANT, v. PORTO RICO FERTILIZER COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action to Recover Dividends and Prevent a Transfer of Stock.— Order Dissolving Attachment.

No. 2499.—Decided March 24, 1922.

APPEAL—ATTACHMENT—JURISDICTION.—A district court has authority to grant an attachment after an appeal has been taken from the judgment.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for the appellant.

*Messrs. C. Coll Cuchí* and *G. Cruzado Silva* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On October 28, 1920, the District Court of San Juan, Section 1, gave judgment for the plaintiff in an action to recover dividends brought by Pedro Gandía against the Porto Rico Fertilizer Company. An appeal was taken from the judgment on November 24, 1920, and on May 5, 1921, the plaintiff moved the court for an attachment to secure the effectiveness of the said judgment. The court sustained the motion and granted the attachment without bond. The defendant thereupon moved the court to set aside the order on the ground "that the court had no jurisdiction to grant the attachment without bond, because an appeal has been taken from the judgment prior to the attachment." The court took the matter under consideration and on June 4, 1921, made an order dissolving the attachment for the reason that after the judgment had been appealed from the court absolutely lost its jurisdiction to grant the attachment either with or without bond. The present appeal is from that order of June 4, 1921.

On March 1, 1902, the Legislative Assembly passed an Act to secure the effectiveness of judgments and it has been construed by this court in several instances. In accordance with section 3 of that Act, as amended in 1903, "The petition praying for any such remedy may be entered when the action is entered or at any stage of the proceedings before final judgment." The words "before final judgment" created some doubt and on April 13, 1916, the legislators amended the Act so as to make this part of it read as follows:

"The petition praying for any such remedy may be entered when the action is entered or at any stage of the proceedings before or after judgment. If security of judgment is prayed after the same has been rendered no bond shall be required."

There is no doubt that after judgment is rendered an attachment may be granted and that if it is it should be without bond. The question is whether by reason of the appeal taken to this court the district court lost jurisdiction to grant the attachment.

The trial court answered this inquiry in the affirmative in accordance with section 297 of the Code of Civil Procedure and section 14 of the Act to secure the effectiveness of judgments. In support of the holding of the lower court the appellee cites the decisions of the Supreme Court in *Ex parte Bolívar,* 12 P. R. R. 261; *Pescay et al.* v. *Texidor et al.,* 26 P. R. R. 155, and *Specialty Shop for Automobiles* v. *Benítez Flores, District Judge,* 29 P. R. R. 248.

The *Bolívar Case, supra,* is not applicable. The Act was there construed as it read before the amendment. The *Pescay Case, supra,* refers to a different legal situation. Only the *Specialty Shop Case, supra,* contains a paragraph which perhaps may be susceptible of the construction urged by the appellee. However, in that same paragraph it was said that the decision of the court was not based on that reasoning, but on the fact that in accordance with the law and jurisprudence there was no judgment before the district court that could serve as a basis for an attachment without a bond. The action originated in a municipal court.

Let us examine the statutes upon which the district court relied. Section 297 of the Code of Civil Procedure provides that "Whenever an appeal is perfected, it stays all further proceedings in the court below, upon the judgment or order appealed from, or upon the matters embraced therein; but the court below may proceed upon any other matter embraced in the action, and not affected by the order appealed from." And section 14 of the Act to secure the effectiveness of judgments prescribes, in substance, that all questions raised shall be considered independently of the main action and all decisions of the court shall be immediately carried into effect.

Is the attachment a part of the judgment? In our opinion it is not, and section 14 of the special Act invoked by the district judge not only does not support his opinion, but shows that the attachment is an independent proceeding prosecuted without interrupting in any manner or interfering with the principal action.

By virtue of an appeal taken from a judgment of a district court the judgment is forthwith subject to be reversed, modified or affirmed by the Supreme Court, but it is not wiped out as it is in the case of a judgment of a municipal court when an appeal is taken to a district court. Moreover, a judgment is presumed to be correct until it is reversed by the Supreme Court.

This being the case, we do not understand why a party who has recovered a judgment which is presumed to be correct notwithstanding the appeal can not avail himself of the privilege granted by law to secure the effectiveness of that judgment by the attachment of property of the party against whom it was rendered.

In prescribing that an attachment may be petitioned for either before or after judgment the Act of 1916 draws no distinction. If the law should be construed according to the appellee's contention it could be nullified at the will of the party against whom the judgment was rendered. It would be sufficient for him to file a simple notice of appeal immediately after rendition of judgment to prevent the successful party from obtaining an attachment.

In a recent opinion of the Supreme Court of the United States we find a paragraph which throws light on the question involved in this case. It reads as follows:

"The amendatory decree of February was obtained long after appeals from the August decree had been granted and when the court had very limited power over the litigation. 'One general rule in all cases (subject, however, to some qualifications) is that an appeal suspends the power of the court below to proceed further

in the cause.' Undoubtedly, after appeal the trial court may, if the purposes of justice require, preserve the *status quo* until decision by the appellate court. *Hovey* v. *McDonald,* 109 U. S. 150, 157. But it may not finally adjudicate substantial rights directly involved in the appeal. *Merrimack River Savings Bank* y. *Clay Center,* 219 U. S. 527, 534. See *First National Bank* v. *State Bank,* 131 Fed. 430. The precise result of the February decree is somewhat doubtful, but we may treat it as an attempt to preserve the *status quo* in order that this court might finally and completely dispose of the whole matter. Thus interpreted the decree (No. 288) was within the court's discretion and as there was no abuse of this discretion it must be affirmed." *Newton* v. *Consolidated Gas Co. of New York,* decided by the United States Supreme Court on March 6, 1922.

This idea of the preservation of the *status quo* is expressed in a decision of the Supreme Court of Pennsylvania as follows:

"An appeal duly taken from a final decree in equity, with approved security, in accordance with the order of court, in connection with the removal of the record to the Supreme Court, operates as a supersedeas, or stay of proceedings to .enforce the decree; but the court below nevertheless retains the right (concurrently with the Supreme Court) to control the actions of the respective parties, in so far as to preserve the *status in quo* of each, as it was at the time the decree was made; and for this purpose, if necessary, to issue an attachment." *New Brighton, &c., R. R. Co.* v. *The Pittsburgh, &c., R. R. Co.,* 105 Pa. 13.

To secure a judgment is not to execute it, and in a certain way it is to preserve the *status quo* existing when it was rendered. Generally, procedural statutes require that the appellants give a bond to secure the right of the party who recovered the judgment and when such a bond is given execution of the judgment is stayed. In Porto Rico the mere filing of a notice of appeal is sufficient to stay its execution. Probably this was the reason, or one of the reasons, why the Legislature amended the Act to secure the effectiveness of judgments as it did in 1916.

For all of the foregoing reasons we are of the opinion that the appeal should be sustained and the order appealed from reversed, the order thereby set aside to stand, without costs.

*Reversed.*

Justices Wolf, Aldrey and Hutchison concurred.